# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICTOR TEON LINDSEY, II,** | : | CIVIL NO. 1:CV-13-3101 |
| Petitioner, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| **J.E. THOMAS,** | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Victor Teon Lindsey, II ("Petitioner"). Petitioner is an inmate currently confined at the United States Penitentiary at Lewisburg, Pennsylvania. He alleges that his due process rights were violated during a disciplinary hearing after which he was found guilty of the prohibited acts of "Possession of a Weapon," in violation of Code 104 and "Possession of Unauthorized Item," in violation of Code 305. (Doc. No. 1, Pet. at 2.) The petition is ripe for consideration and, for the reasons that follow, will be denied.

### I.     Factual Background

Petitioner is serving a 181-month federal sentence imposed by the United States District Court for the District of New Mexico following his conviction on various drug and firearms charges. On March 31, 2008, while confined at USP-Pollock, Louisiana, Incident Report No. 1716339 was issued against Petitioner by Officer A. Rodriguez due to a homemade knife and a small bag of tobacco found by Rodriguez in Petitioner's locker. Petitioner was charged with violations of Code 104, possession, manufacture or introduction of a weapon; and Code 305,

possession of anything not authorized. (Doc. No. 7-1 at 9, Incident Report.)[1] The incident was described as follows:

> Description of Incident (Date 3-31-2008) approx. 11:26 am. On the above date and approx. time while conducting random searches, I found a homemade knife approx. 9 inches long and one envelop[e] with a small bag of tobacco in the top locker which is assigned to I/M Lindsey #19944-051. Per the roster I/M [redacted] is assigned to B-2 cell 250L[.] I/M Lindsey is assigned to 250U. I secure[d] the homemade knife and tobacco and notified the operation Lt.

(Id.)

On March 31, 2008, Lieutenant A. Pimentel provided Petitioner with a copy of the incident report. Id. §§ 14-16. The same day, Pimentel investigated the incident report, and advised Petitioner of his rights, including the right to remain silent. (Id. § 23.) Petitioner made the following statement, "Yes, that is my weapon. I have nothing else to say." (Id.) His attitude was cooperative and he did not request any witnesses. The matter was thereafter referred to the Unit Discipline Committee ("UDC") for further disposition.

On April 2, 2008, Petitioner appeared before the UDC. (Doc. No. 7-1, ¶ 21.) The UDC referred the matter to a Discipline Hearing Officer ("DHO") based on the reported evidence and Petitioner's statement that the incident report was true, and because the seriousness of the charges warranted consideration for sanctions higher than available to the UDC. (Id. ¶¶ 17-19.) At the conclusion of the UDC hearing, Petitioner was provided and signed a Notice of Discipline Hearing before the DHO and an Inmate Rights at Discipline Hearing form. (Doc. No. 7-1 at 11-12.) He waived his rights to a staff representative, to have witnesses testify, and to present

---

[1] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Court's official electronic case filing system (CM-ECF), rather than the page number of the original documents.

documentary evidence at the hearing.  (Id.)

Petitioner signed the Inmate Rights at Discipline Hearing form, as witnessed by staff member R. McGowan, indicating that he had been personally advised of the following rights at the DHO hearing:

1. The right to have a written copy of the charge(s) against [him] at least 24 hours prior to appearing before the [DHO];

2. The right to have a full-time member of the staff who is reasonably available to represent [him] before the [DHO];

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in [his] behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. [His] silence may be used to draw an adverse inference against [him].  However, [his] silence alone may not be used to support a finding that [he] committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendars days of notice of the DHO's decision and disposition.

(Id. at 11-12.)

Petitioner appeared before DHO C. Bickle at his disciplinary hearing on May 1, 2008, and was advised of his rights.  (Doc. No. 7-1 at 13, DHO Report § I(C).)  He again waived hs right to a staff representative and offered no documentary evidence.  (Id., § II.)  At this time, he

denied the charges and made the following statement:

> The shank is not mine, another inmate will come to tell you the shank belonged to him, [redacted]. I know nothing about it and never saw it before the staff found it. I have never been charged for having a weapon. I don't need one.

(Id., § III(B).) At the hearing, another inmate testified that he placed the weapon in Petitioner's cell to get him locked up and off of the compound. (Id., § III(C)(2).) However, when confronted with the information that the reporting officer found the weapon in Petitioner's locker, the inmate could not explain how he "tossed" the shank into the locker. (Emphasis added.)

The DHO considered the documentary evidence of the photograph of the weapon and contraband in addition to the incident report and investigation. (Id., § III(D).) Following the hearing, the DHO concluded that Petitioner had committed the prohibited acts as charged, based on the written statement of the reporting officer, Petitioner's statement to the investigating officer that the weapon belonged to him, and Petitioner's statement to the UDC that the charges in the incident report are true. (Id. § V.) The DHO also considered Petitioner's subsequent denial and the statement of the inmate witness he requested. The DHO wrote:

> Inmate [redacted] stated that he tossed the weapon in your cell to try and get you locked up and removed from the compound. The DHO advised inmate [redacted] the weapon was found in your locker and was asked how he could toss the shank in the cell and the weapon end up in the locker assigned to Inmate Lindsey. Inmate [redacted] had no response. It should also be noted inmate [redacted] appeared earlier before the DHO for possession of a weapon charge and denied knowledge of any weapons and stated he has never had a weapon while in prison, which obviously contradicts his statement regarding having tossed a shank in your cell and lessens his credibility before the DHO. It should also be noted that when questioned by the investigative lieutenant, you stated, "Yes, that is my weapon," and during your appearance before the UDC you indicated the incident report was true both admission[s] by you that the shank belonged to you. This is a clear contradiction of your statement to the DHO that the weapon did not belong to you and lessens your credibility with the DHO as well. Your admission to the UDC that the incident report was true is also considered an admission to the possession of the tobacco as well. It should further be noted that you elected to

> leave the hearing prior to completion and the remainder of the hearing was conducted in your absence. The DHO gives greater weight to the reporting staff member's written statement that the homemade weapon and a bag of tobacco was found in your assigned locker in your cell which is corroborated by your admission to the investigative lieutenant and UDC that the weapon belonged to you.
>
> The DHO finds that the evidence listed above supports a finding that you committed the prohibited acts, possession of a weapon, Code 104, and possession of contraband, Code 305.

(Id.)

The following sanctions were imposed on Petitioner by the DHO: (1) disallowance of 30 days good conduct time; (2) forfeiture of 40 days non-vested good conduct time; (3) disallowance of 7 days good conduct time; (4) 60 days disciplinary segregation; (5) 90 days loss of visiting privileges (suspended); and (4) 365 days loss of commissary and telephone privileges. (Id., § VI.) The DHO issued his written decision on May 1, 2008, and the report was delivered to Petitioner on the same date. (Id. § IX.)

The instant habeas corpus petition was filed on December 30, 2013. Petitioner challenges the disciplinary action against him claiming that his due process rights were violated because: (1) the DHO failed to conduct the hearing with his staff representative and witnesses, and hid evidence Petitioner presented during the hearing (witness statements) that showed he did not commit the charged conduct, and (2) the investigating officer failed to review/preserve video footage where it would have been evident that he did not commit the charges acts. (Doc. 1, Pet. at 7.)

## II.     Legal standard

The BOP has established regulations setting forth the procedures for inmate discipline

hearings. See 28 C.F. R. Section 541.10 et seq.[2] These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate institutional rules. The first step requires preparing an incident report and referring the matter for investigation. See 28 C.F.R. § 541.14. Following the investigation, the matter is then referred to the Unit Discipline Committee (UDC) for an initial hearing pursuant to 28 C.F.R. § 541.15. The UDC may itself determine whether a prohibited act was committed or refer the case to the DHO for further hearing. See 28 C.F.R. § 541.15(f). The DHO has the authority to dismiss any charge or to find a prohibited act was committed and impose any available sanction for the act. Id. § 541.18. The DHO proceeding is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.17.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974.) Greatest category offenses carry a possible sanction of loss of good conduct time credits. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff, 418 U.S. at 564-66. The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-

---

[2] These guidelines were amended in August 2011 and are now found at 28 C.F.R. § 541.5, et seq. Because the disciplinary action in this case was conducted in 2008, the regulations in effect at the time are being utilized.

03 (3d Cir. 1991)(applying <u>Hill</u> standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Hill</u>, 472 U.S. at 455-56. Under <u>Hill</u>, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. <u>Id</u>. at 457; <u>see also</u> 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." <u>Moles v. Holt</u>, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

### III.     Discussion

####     A.     Exhaustion

Respondent first maintains that the petition is subject to dismissal due to Petitioner's failure to exhaust his available administrative remedies. Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241. <u>Speight v. Minor</u>, 245 F. App'x 213, 215 (3d Cir. 2007); <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested

conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998)(Roth, J., concurring0(exhaustion excused upon petitioner demonstrating futility); Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir. 1988)(exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

The Bureau of Prison's Administrative Remedy Program is set forth at 28 C.F.R. § 542.10, et seq. In order for a federal prisoner to exhaust his administrative remedies, he must comply with the BOP's grievance process set forth therein for the relevant time. See 28 C.F.R. §§ 542.10 through 542.19 (revised as of July 1, 2009). Appeals of DHO decisions must be submitted initially to the Regional Director for the region where the inmate is housed (on a BP-10 form) within twenty days of the DHO decision.[3] See § 542.14(d)(2). From there, the inmate may appeal (BP-11) to the General Counsel (Central Office) within thirty days of the date the Regional Director signed the response. See § 542.15(a). This step is the final administrative appeal, and its completion constitutes exhaustion of administrative remedies. The BOP will consider a late appeal upon a showing of a "valid reason" for the delay. Id. "In general, valid reason for delay means a situation which prevented the inmate from submitting the request

---

[3] In addressing the matter of "Appeals from DHO," 28 C.F.R. § 541.19 provided as follows:

> At the time DHO gives an inmate written notice of its decision, the DHO shall also advise inmate he may appeal the decision under Administrative Remedy Procedures (see part 542 of this chapter). An inmate's initial appeal of a decision of DHO should be filed directly to the appropriate Regional Office.

8

within the established time frame." See § 542.14(b).

In the instant case, Respondent states that since Petitioner's designation to the BOP, he has filed a total of sixty-six administrative remedies. (Doc.7-1, Ex. 1, Knepper Decl. ¶ 7.) With respect to the Incident Report at issue in this action (#1716339), he filed Administrative Remedy 495376-R1. (Id.). The Regional Director denied this administrative remedy on July 10, 2008, and Petitioner did not appeal the matter to the BOP's Central Office. (Id.)

Over five years later, on October 7, 2013, Petitioner attempted to file another administrative remedy with respect to Incident Report # 1716339, but it was rejected as untimely on October 21, 2013. (Doc. No. 1 at 12.) An appeal was filed with the Central Office on October 31, 2013, and rejected on November 18, 2013 as untimely. (Id. at 10.) An additional reason given for the rejection was that the appeal was submitted to the wrong level. The Central Office also made the following remark: "Provide staff memo stating reason untimely filing was not your fault to the Regional Office." No further filings with respect to this incident were pursued.

In light of the foregoing, Respondent argues that the pending habeas petition should be dismissed because Petitioner failed to exhaust administrative remedies. In his traverse, Petitioner does not address Respondent's failure to exhaust argument. (Doc. No. 8.)

Petitioner does not dispute that he received a copy of the DHO report on May 8, 2008, one week following the DHO hearing. Although he filed an appeal with the Regional Director that was denied on July 10, 2008, he failed to exhaust this remedy with the Central Office, and thus has procedurally defaulted his claims with respect to Incident Report #1716339. To the extent he later attempted to revive his exhaustion efforts with respect to this incident report in

October and November of 2013, he is barred from doing so and his remedies were properly dismissed as untimely. The claims raised in the instant habeas petition are unexhausted, and are properly dismissed on this basis.

**B.    Merit**s

Even if the Court were to find Petitioner's claims to be exhausted for purposes of filing this matter, Petitioner's due process claim has no merit. The procedural requirements of <u>Wolff</u> and <u>Hill</u> were met in this case. Petitioner timely received a copy of the Incident Report on March 31, 2008, the same day it was issued. A UDC hearing was conducted on April 2, 2008, after which Petitioner was notified of the DHO hearing and of his rights in connection with the hearing. He was given an opportunity to have a staff representative at the hearing, to present witnesses, and to present documentary evidence. Although he declined a staff representative and to submit documentary evidence, an inmate witness testified at the hearing upon Petitioner's request. Petitioner was also provided with a copy of the May 1, 2008 DHO decision on the same date.

In his traverse, Petitioner continues to assert that he was denied the right to have a staff representative and witnesses at his DHO hearing. For the first time he claims that his signature was "forged" on the Inmate Rights at Discipline Hearing form (Doc. No. 8 at 6). The Court rejects this argument for the following reasons. First, Officer McGowan's signature appears at the bottom of the form witnessing the fact that Petitioner was advised on his rights and signed the form on April 2, 2008. (<u>Id</u>.) More importantly, on the same date, Petitioner also signed the "Notice of Discipline Hearing Before the DHO" form wherein he states that he does not wish to have a staff representative or witnesses at his DHO hearing. (Doc. No. 8 at 7.) He does not

allege that this form was forged. Further, at the DHO hearing on May 1, 2008, Petitioner was again advised of his rights and stated that he did not wish to have a staff representative. (Doc. 7-1 at II.) However, he did change his mind with respect to witnesses and stated that an inmate would testify that the shank did not belong to Petitioner. (Id. at III.) The inmate requested by Petitioner was permitted to testify. No other witnesses were requested to testify or submit written statements, and this is documented in the DHO report. (Id. at III(4)(5).) As such, any argument by Petitioner that he requested and was denied staff representation and/or witnesses is not supported by the record.

      The only other argument set forth by Petitioner is that video footage was not reviewed with respect to this incident. Again, nowhere in the record is there any indication that Petitioner ever requested to obtain/submit video surveillance, or that any such evidence existed and was denied by the DHO. In addition, at the DHO hearing Petitioner's statement consisted of his denial that the shank was his, and his request to have the inmate witness testify that the shank belonged to him. No statement was made by Petitioner to the DHO that video footage existed exonerating him and that he wished to present such evidence at the hearing. (Id. at III.) For these reasons, the Court finds that the DHO hearing complied with all of the Wolff procedural due process requirements.

      In addition, the record demonstrates that the DHO met the evidentiary standard when he determined that Petitioner committed the prohibited acts. There existed considerable evidence, including two admissions by Petitioner and the fact that the shank and tobacco were found in the locker that belonged to him. Although another inmate testified at the hearing that he tossed the shank into Petitioner's cell, the inmate was unable to explain how the items were found in

Petitioner's locker.  In addition, this inmate witness testified in a previous disciplinary matter that he never possessed a weapon while imprisoned.  Because Petitioner had admitted to possessing the shank to the investigator and to the UDC, but provided conflicting testimony at the DHO hearing, and because his witness could not explain how the shank was placed in Petitioner's locker, the DHO concluded that their testimony was not credible.

The DHO assigned the greater weight of the evidence to the written statement of the reporting staff member who stated that he found the shank and tobacco in Petitioner's locker, as well as the photograph of the items.  As supported by the record, the DHO's decision meets or exceeds the "some evidence" standard.  For these reasons, even if the claims in the instant petition were exhausted, they are without merit.  An appropriate order follows.